**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| WENDEN-BUUDE DIANDA a.k.a. JULIE DIANDA, | : : : | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Plaintiff, | : : | |
| v. | : : | |
| UNIVERSITY OF UTAH, | : : | Civil No.: 2:23-cv-00895-TC |
| Defendant. | : | Hon. Tena Campbell |

COMES NOW the Plaintiff, Wenden-Buude Dianda a.k.a. Julie Dianda ("Ms. Dianda" or "Plaintiff"), complains of Defendant University of Utah, (hereinafter "the University of Utah"or "the University" or "Defendant"), demands trial by jury and as and for causes of action alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and Vocational Rehabilitation Act of 1973, as amended, and the Americans with Disabilities Act of 1990, as amended, for discrimination in

employment and for retaliation. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e (5). Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g). Where employment discrimination based upon disability is alleged, jurisdiction is conferred by the Americans with Disabilities Act ("ADA") and/or the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

2. Venue is proper in this Court in that the actions and decisions alleged herein occurred within the federal district of Utah.

## PARTIES

3. Plaintiff Wenden-Buude Dianda ("Ms. Dianda" or "Plaintiff") is a citizen of the United States and, at all times relevant hereto, was a resident of the State of Utah.

4. The entity Plaintiff names as Defendant herein is the University of Utah (the "University" or "Defendant"). The University of Utah is a political subdivision of the State of Utah which does business in the State of Utah.

5. Furthermore, on information and belief, Ms. Dianda alleges that, Defendant maintains a contract of at least $10,000 with a federal entity, so as to make Defendant subject to or otherwise subject to the non-disability discrimination sections and requirements of the Vocational Rehabilitation Act of 1973.

## STATEMENT OF FACTS

6. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 5 above as if alleged in full herein.

7. Plaintiff alleges that, from August 2020 to October 2022, Ms. Dianda was a graduate student at the University.

8. Plaintiff alleges that, after completion of the fall 2021 term, Ms. Dianda had a 3.7 GPA with 29 out of 30 credits completed for her graduate studies in civil engineering. At that time, Plaintiff was offered and she accepted an opportunity to work as a paid research assistant with Dr. Andy Hong ("Dr. Hong") in the Civil Engineering Department.

9. Plaintiff alleges that, from November 2021 to the third week of June 2022, she worked well with Dr. Hong, performing her research assistant duties in a fully satisfactory manner.

10. Plaintiff alleges that, in mid-June 2022 she informed Dr. Hong that she was pregnant. Plaintiff told Dr. Hong that she intended to continue working as a research assistant through the end of the summer of 2022, to approximately August 30, 2022, whereupon she intended to stop working and prepare for the birth of her baby. In other words, Plaintiff alleges she impliedly asked to be able to continue

working in her position until at least the end of the summer.  Plaintiff alleges such communications constituted protected activity.

11. Plaintiff alleges that, only a few days after she informed Dr. Hong that she was pregnant and was desirous and intending on continuing to work, Dr. Hong revoked her access to the lab where she performed many of her research assistant duties and work and subsequently actually or constructively terminated her employment as a research assistant, even though the summer term was not even half over and Plaintiff had information that she desired and intended to keep working until at least the end of the summer.  Plaintiff alleges Dr. Hong took such adverse actions against her because of her pregnancy.  Plaintiff also alleges the University asked her to submit a letter of resignation under false pretenses.

12. Plaintiff alleges that, in addition to revoking her access to the lab and prematurely terminating the employment relationship between Plaintiff and the University because of Plaintiff's pregnancy, Dr. Hong further discriminated and retaliated against Plaintiff by giving her an "E" instead of a "T" for her work as a research assistant.  As shown on the University's transcript key, an "E" grade indicates that the student failed the coursework and is factored into the student's GPA as a zero.  However, a "T" grade indicates "Work in Progress" and does not affect the individual's grade point average.

13. Plaintiff alleges that, after finding out about this "E" grade, she addressed the grading issue with the Department of Civil Engineering, after which the Department changed her grade from an "E" to a "W", which means "Withdrawn".

14. Plaintiff alleges that the University notified her of the grade change by email. This "W" stands as a blemish on her academic record.

15. Plaintiff alleges that, in the same email by which the University informed her of her change in grade from an "E" to a "W", the University also falsely accused her of not handing over department files that she had access to during her time as a research assistant.

16. Plaintiff alleges that, on June 30, 2022, Dr. Hong also accused her of being disgruntled when she left the lab.

17. Plaintiff alleges that, approximately one week before classes were to commence in August 2022, Dr. Hong and Dr. Barber falsely accused Ms. Dianda of moving or deleting lab files. Plaintiff alleges a continuing violation which continued until at least October 2022.

18. Furthermore, although the University allowed her to register for the last class needed to complete her graduate studies, it delayed that registration process.

19. Plaintiff alleges that, as confirmed by email, Ms. Dianda turned in her key to the lab on June 27, 2022, and, after that time, she had no access to the lab. Pursuant to University policy, Ms. Dianda was to be reimbursed five dollars when she returned the key. Indeed, the day after she turned in her key, she received a receipt for the five dollar reimbursement, providing for the proof that she did turn in her key and did not access the lab and that Dr. Hong — with Dr. Michael Barber ("Dr. Barber") as his accomplice — falsely accused Plaintiff of engaging in actions inconsistent with her status as a graduate student and a paid research assistant employee, as part of his ongoing pattern of discrimination and retaliation towards Plaintiff because of her pregnancy and pregnancy-related needs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION AND RETALIATION ON THE
### BASIS OF GENDER AND PREGNANCY

20. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 18 above as if alleged in full herein.

21. According to the University Non-Discrimination Policy, the University is not supposed to discriminate against persons "on the basis of race, ethnicity, color, religion, national origin, age, disability, sex, sexual orientation, gender, gender identity, gender expression, pregnancy, pregnancy -related conditions, genetic

information, or protected veteran status ('protected class'), in employment, treatment, admission, access to educational programs and activities, or other University benefits or services". Interim Policy 1-012.III.A.1.

      22.      In addition to the University's policy prohibiting discrimination, Title VII and the PDA make pregnancy discrimination in violation of the law. "The PDA emanates from Title VII, which, among other things, makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex. *EEOC v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir. 1992) (*citing* 42 U.S.C. § 2000e-2 (a) (1)).

      23.      To state a prima facie case of pregnancy discrimination, Ms. Dianda alleges that: (1) she belong to the protected class, *e.g.,* she was pregnant during the relevant time period; (2) she remained qualified for the position she held, or applied for another position for which she was qualified; (3) Defendant subjected her to unfavorable treatment; and (4) Defendant treated her less favorably than others who were not pregnant, but were similar in their ability or inability to work. *Leeker v. Gill Studios, Inc.,* 21 F.Supp.2d 1271 (D. Kan. 1998).

      24.      Plaintiff alleges that, by and through Dr. Hong's actions, the University blatantly discriminated against Ms. Dianda because of her sex and pregnancy, in violation of the University's Non-Discrimination Policy, as well as in

violation of Title VII of the Civil Rights Act of 1964, and the Pregnancy Discrimination Act (the "PDA").

25. Plaintiff alleges that she was pregnant during the relevant period, and had been performing satisfactorily.

26. Plaintiff alleges that, shortly after Ms. Dianda notified Dr. Hong of her pregnancy, Dr. Hong began to take adverse action against her, including terminating her employment with the University, either actively or by means of a constructive discharge.

27. The temporal proximity between her announcement of her pregancy to Dr. Hong and Dr. Hong's decision to terminate her employment support a strong inference that unlawful discrimination occurred.

28. Plaintiff allegations state a prima facie case of pregnancy discrimination.

29. Plaintiff alleges that Dr. Hong's discriminatory actions has caused Ms. Dianda damages in the form of lost wages, and lost benefits and other damages.

## SECOND CAUSE OF
## RETALIATION

30. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 32 above as if alleged in full herein.

31. Plaintiff alleges that the Defendant retaliated against her in violation of the Title VII and the PDA.

32. To state a prima facie case of retaliation, Plaintiff alleges facts which establish, or tend to establish, that: (1) she engaged in protected activity; (2) Defendant took adverse action against her that a reasonable employee would have found to be materially adverse; and (3) a causal connection exists between the protected activity and the adverse action.

33. Plaintiff alleges she may establish the first element in several ways. Plaintiff alleges she establishes the first element by alleging that she requested a reasonable accommodation for her pregnancy in that she impliedly asked to be able to continue to work until the end of the summer. *See Wehrley v. American. Fam. Mut Ins. Co.,* 513 F.App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,* 502 F.34 1176, 1194 (10th Cir. 2007)).

34. Thus, Plaintiff alleges she engaged in protected activity when she informed her supervisor that she was pregnant and would be ending her employment at the end of the summer (approximately August 31, 2022).

35. Plaintiff's allegations satisfy the first element of her prima facie case.

36. Plaintiff alleges that, after she engaged in protected activity, Defendant subjected her to adverse employment actions. The Supreme Court has set forth the standard to be used in determining what constitutes an adverse employment action. The Supreme Court explained that "materially adverse" means that the harm must be significant. Specifically, the action must be materially adverse to a reasonable employee or applicant. It also explained that the determination must be made objectively, and thus must be measured against how a "reasonable person" would feel or act, an employee must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination". However, the Supreme Court emphasized that whether any given act constituted retaliation may depend upon the particular circumstances. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

37. Plaintiff alleges that, after she engaged in protected activity, Defendant took several adverse actions against her, including when it terminated her employment.

38. Plaintiff alleges that Dr. Hong (and Dr. Barber) also falsely accused Ms. Dianda of engaging in misconduct in several ways, including moving or deleting files.

39. Plaintiff's allegations satisfy the second element of her prima facie case.

40. Plaintiff alleges a causal connection exists between the protected activity and the adverse actions. A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by an adverse action". *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1258 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kansas Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)).

41. Plaintiff alleges that, immediately after she engaged in protected activity, Defendant began taking adverse action against her.

42. Plaintiff alleges that, immediately after she engaged in protected activity, the Defendant terminated her employment.

43. Plaintiff alleges that, in addition to unlawfully discriminating against Ms. Dianda, Dr. Hong also retaliated against her by giving her an "E" grade and by making and publishing false and defamatory statements about her.

44. Defamation is the act of making false statements about someone that damages the reputation. *Jacob v. Bezzant,* 2009 UT 37, ¶ 21, 212 P.3d 535, 543-544. Defamation, per se, refers to statements that are considered so harmful on their face that actual damages need not be proven. Under Utah law, defamation, per se,

typically includes false statements that allege criminal conduct on the part of the plaintiff … or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office.  *Id.* ¶ 26, 212 P.3d at 545.

45. In the present matter, Dr. Hong's retaliatory false statements regarding Ms. Dianda rise to the level of defamation, per se, because they imply criminal conduct and also impugn her professional reputation.  Accordingly, damages are presumed.

46. In the instant case, just a few days separated Plaintiff's engagement in protected activity and her termination.  This supports the inference that Defendant suspended Plaintiff because of her protected activity.

47. Ms. Dianda alleges the temporal proximity between her protected activity and her termination supports an inference of a causal connection.  Thus, Ms. Dianda alleges that her engaging in protected activity was the but-for cause of her termination.

48. Plaintiff's allegations satisfy the third element of her prima facie case.

49. Plaintiff's allegations state a prima facie claim of unlawful retaliation.

50. Plaintiff alleges that the reasons the Defendant gave for the termination are false and pretextual.

51. Assuming that Ms. Dianda states a prima facie case of discrimination or retaliation, she alleges that whatever Defendant has stated or may state as reasons for its adverse actions against her are a pretext for discrimination and retaliation.

52. To allege pretext, Ms. Dianda alleges that the Defendant's stated reasons for its actions are "disingenuous" or a "sham".

53. Defendant may allege they terminated Ms. Dianda's employment because she failed to perform her job duties in a satisfactory manner or that she engaged in some form of misconduct.

54. Plaintiff denies any such allegations. Accordingly, Ms. Dianda alleges that the Defendant's reasons for terminating her employment are pretextual.

55. Given the temporal proximity and lack of documented performance issues, Plaintiff alleges she was actually terminated in retaliation for informing the University that she was pregnant.

56. Plaintiff alleges that, after the fact, the Defendant are looking for anything to defend its decision to unlawfully terminate her. Plaintiff alleges this is further evidence of a retaliatory motive.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

57. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 56 above as if alleged in full herein.

58. Defendant has committed to not discriminate against employees because of pregnancy or pregnancy-related conditions.

59. Plaintiff relied on such policies.

60. Plaintiff alleges the Defendant's own written policies, as well as her reliance thereon, caused a contract to form between the Defendant and her as to her ability to work while pregnant.

61. Soon after Plaintiff informed the University of her pregnancy and her desire and intent to work through her pregnancy until the end of summer 2022, the Defendant terminated her employment. Plaintiff alleges such adverse action constitutes a breach of contract.

62. Plaintiff asserts a claim for breach of contract based on the Defendant' violations of its own policies.

## DAMAGES

63. Plaintiff alleges the Defendant' actions have caused her various losses, injuries, and other damages, including lost wages, lost benefits, financial stress and emotional distress.

64. Plaintiff alleges that she lost her wages of $25.75 an hour at 40 hours a week (approximately $50,000 per year). Plaintiff alleges that this loss of employment has caused her financial stress and other kinds of stress.

65. Plaintiff alleges that the University unlawfully discriminated against her, entitling her to back pay and front pay as well as compensatory, and punitive damages for the University's violation of her civil rights.

66. The University's unlawful actions have not only harmed Ms. Dianda financially, but also emotionally, and the defamation by University representatives has impeded her ability to procure future employment.

67. Plaintiff alleges that, under Title VII and the PDA, if she prevails in the instant action, she will be entitled to an award of attorney's fees and costs.

68. Petitioner alleges also entitlement to punitive damage, which is appropriate in the present matter, especially in light of the University's flagrant disregard of her civil rights.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

69. On information and belief, Plaintiff alleges that, in approximately late August 2023, she filed an Intake Questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC"). This filing indicated her desire to activate the EEOC Charge of Discrimination filing machinery.

70. On information and belief, Plaintiff alleges the EEOC duly prepared a Charge of Discrimination. Ms. Dianda formally signed her Charge of Discrimination and submitted it to the EEOC.

71. Plaintiff filed her Intake Questionnaire and her Charge of Discrimination within 300 days from the last date of the alleged harm. Plaintiff alleges the Court may exercise jurisdiction over all non-discrete discriminatory actions constituting a continuing violation occurring before the date which is 300 days before when Plaintiff filed her Charge of Discrimination, and continuing past such date, and over all discrete discriminatory actions occurring on or after the date which is 300 days before Plaintiff filed her Charge of Discrimination. The Court may treat all alleged discrete discriminatory actions occurring before this date as being untimely for purposes of relief, but may give weight to evidence of such for evidentiary purposes. Plaintiff alleges all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

72. On or about September 22, 2023, the EEOC issued Plaintiff a Notice of Right to Sue letter.

73. Plaintiff is filing the instant civil action within 90 days of receipt of such right to sue letter.

74. Plaintiff has exhausted all necessary and required administrative remedies.

**RELIEF REQUESTED**

Accordingly, based on the above allegations, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Ms. Dianda on the basis of her disability and retaliated against Ms. Dianda, in violation of the Title VII of the Civil Rights Act, the VRA and/or the ADA;

2. Awarding Ms. Dianda "make whole" relief;

3. Plaintiff further demands that her separation of employment from the University be re-coded on all relevant documents and computer systems as a voluntary resignation;

4. Plaintiff further demands that her grade for the research assignment on her official transcript be changed from an "E" or a "W" to a "T";

5. Additionally, Plaintiff demands that the University issue a declaration under penalty of perjury, acknowledging that Ms.

        Dianda did not have access to the lab after June 27, 2022, and exonerating her from accusations that she moved or delayed files;

6. In addition to the monetary components of the proposed settlement, Ms. Dianda demands that the University provide only a neutral job reference in the future, which shall be limited to dates of employment and position;

7. Awarding Ms. Dianda her reasonable attorney's fees and costs;

8. Awarding Ms. Dianda such other relief as may be just and equitable.

DATED this 11th day of December, 2023.

                                    */s/ David J. Holdsworth*
                                David J. Holdsworth
                                *Attorney for Plaintiff*

# VERIFICATION

Wenden-Buude Dianda a.k.a. Julie Dianda, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

                                                     */s/ Wenden-Buude Dianda*
                                                   Wenden-Buude Dianda

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of _____, 20___.

                                                   _____
                                                   NOTARY PUBLIC

MY COMMISSION EXPIRES:      RESIDING AT: _____